Coos
No. 97-390

## PAULINE G. LAFLAMME

v.

## GASTON N. LAFLAMME

December 28, 1999

*Thomas J. Cote,* of Gorham, by brief, and *Martin, Lord & Osman, P.A.,* of Laconia (*David J. KillKelley* on the brief and orally), for the plaintiff.

*Waystack & King,* of Colebrook (*Philip R. Waystack, Jr.* and *Jonathan S. Frizzell* on the brief, and *Mr. Waystack* orally), for the defendant.

BROCK, C.J. The plaintiff, Pauline G. Laflamme, appeals a decision of the Superior Court (*Smith,* J.) approving the recommendation of a Marital Master (*Pamela D. Kelly,* Esq.) reducing an alimony obligation of the defendant, Gaston N. Laflamme. We reverse.

The parties had been married for more than thirty years and had raised six children when they were divorced in 1989. The decree of divorce incorporated their stipulations. Under the decree, the defendant received substantially more than one-half of the marital assets. The decree provided in a stipulation that the

> Defendant shall pay to Plaintiff as permanent alimony and not rehabilitative alimony, [a fixed sum] for the rest of her life . . . . This alimony obligation shall be a charge against the Defendant's estate, it being the parties' intention that this obligation continue for the remainder of the Plaintiff's life, barring any catastrophic event, including Defendant's medical condition, which materially affects Defendant's ability to generate income.

In 1993, the defendant filed a petition to modify alimony. *See* RSA 458:14 (1992). The defendant alleged, and the trial court found, that he was sixty-four years of age and no longer physically able to work as a logger. Due to changing economics in the logging industry, the defendant had filed for bankruptcy, and he was making payments to the bankruptcy court. His businesses had ceased operations and had trade debts of approximately $100,000. In addition, for 1992, he owed approximately $43,000 in State and federal taxes. The defendant alleged that he had retired from the logging business in March 1993 and that his income was "reduced dramatically" to social security benefits and rental income from his interest in a trailer park. He argued that these changes constituted a substantial change in circumstances sufficient to warrant reduction of his alimony obligation.

In 1994, the court denied the defendant's petition. The court found that many of the assets awarded to the defendant had significantly increased in value. For example, properties in Canaan, Vermont that were owned by the defendant's company and that had been valued at approximately $170,000 at the time of the divorce were sold for $475,000 less than one year later. A lakeside "camp" awarded to the

defendant and valued at $150,000 on his affidavit was worth approximately $250,000 at the time of the 1994 proceedings. An automotive repair garage, valued at $22,500 at the time of the divorce, was then being sold for $85,000. Further, at the time of the divorce, the defendant "knew and foresaw that he was two to three years from retirement." The court also found that, even in light of the bankruptcy proceedings, upon the sale of the assets, the defendant "is able to generate sufficient income to continue the payment of alimony in full." The court found that the permanent alimony award stipulated to by the parties had been granted "in lieu of [an] equal distribution of the marital assets." The court concluded that the defendant failed to establish a substantial change in circumstances that would warrant a change in alimony.

In 1996, the defendant filed a second petition to modify alimony, alleging essentially the same facts he had relied on in 1994, and that he had incurred a significant tax obligation to the Internal Revenue Service on the sale of his properties. In 1997, the Marital Master (*Pamela D. Kelly*, Esq.) recommended reducing alimony because the "[d]efendant has systematically liquidated corporate assets and is in the process of dissolving [his] business." The master found that proceeds from the sales of these properties had been used "to pay his . . . annual alimony obligation and to make improvements to his trailer park in order to enhance his prospects for future income, as well as to pay various personal and corporate liabilities, particularly taxes," which taxes the master found totaled over $60,000.

The master reasoned that a reduction was appropriate because "when [the] assets have been sold (as contemplated by the February, 1994 order), they are no longer available to provide funds to pay alimony. Thus, it is clear that the circumstances of Defendant's assets have changed substantially since 1994." The master also found that the defendant's financial condition was "still superior" to the plaintiff's, "but the gap between them has narrowed significantly." The master recommended a reduction in alimony, notwithstanding the fact that "[s]ince the . . . 1994 order, the Defendant was able to generate sufficient income to continue the payment of alimony in full."

On appeal, the plaintiff argues, *inter alia*, that the trial court erred: (1) in reducing alimony because the divorce decree's "catastrophic event" standard was not satisfied; (2) in finding a change in circumstances warranting a modification of alimony; and (3) by failing to apply res judicata to the issues raised in the 1994 order. Further, the plaintiff alleges a number of constitutional violations. Because we reverse on a non-constitutional basis, however, we

decline to reach the merits of the plaintiff's constitutional claims. *Olson v. Fitzwilliam*, 142 N.H. 339, 345, 702 A.2d 318, 322 (1997).

■ "In reviewing a support order modification, we will not disturb the decision of the trial court unless we determine that the court clearly abused its discretion." *Gnirk v. Gnirk*, 134 N.H. 199, 201-02, 589 A.2d 1008, 1010 (1991). "[A]limony is something more than a mere substitute for support. It is also understood to include as an element for consideration, the adjustment of property rights upon an equitable division." *Stritch v. Stritch*, 106 N.H. 409, 411, 213 A.2d 426, 428 (1965) (quotations and brackets omitted). In this case, the court in 1994 found that that award was "in lieu of [an] equal distribution of the marital assets." Thus, the award was intended to equalize the parties by providing the plaintiff with income generated from productive assets retained by the defendant.

■ "To obtain an order modifying a support obligation, a party must show that a substantial change in circumstances has arisen since the initial award, making the current support amount either improper or unfair." *Giles v. Giles*, 136 N.H. 540, 546, 618 A.2d 286, 290 (1992) (quotation omitted); *see Norberg v. Norberg*, 135 N.H. 620, 622, 609 A.2d 1194, 1196 (1992). A stipulation preventing modification to an alimony award is not binding on the court because an alimony award is always modifiable. *Norberg*, 135 N.H. at 623, 609 A.2d at 1195-96. We need not decide whether parties can agree to a higher modification standard, such as the "catastrophic event" standard contained within the parties' decree in this case, because we conclude that there was no change in circumstances sufficient to warrant a modification even under the "substantial change" standard. *See Fortuna v. Fortuna*, 103 N.H. 547, 550, 176 A.2d 708, 710-11 (1961).

■ The plaintiff argues that res judicata barred reconsideration of those factors rejected as insufficient in the court's 1994 order. We will assume without deciding that preclusion principles did not bar the trial court from reconsidering the factors and circumstances alleged in 1994. The divorce decree, including the stipulations incorporated therein, however, must be interpreted in light of the facts and circumstances known to the parties and the court at the time the court issued the decree, along with future facts or circumstances known or reasonably anticipated to occur in the future. *Cf. Henry v. Henry*, 129 N.H. 159, 162, 525 A.2d 267, 269 (1987); *Morrill v. Millard (Morrill)*, 132 N.H. 685, 689, 570 A.2d 387, 389 (1990).

The trial court modified alimony based on a finding that the defendant sold assets and no longer had income to pay alimony. We conclude that the .master and the trial court erred because they overlooked the equities of the case. *Henry*, 129 N.H. at 162, 525 A.2d at 269.

In 1994, the trial court found, and on the record before this court the defendant has never disputed, that he knew at the time of the divorce that he would be retiring in a few years. Even though he knew he would retire, he agreed to pay the plaintiff alimony in exchange for his receipt of substantially more than half of the marital assets. "While the terms of the stipulation are not controlling in this case, they are relevant circumstances to be considered by the court." *Id.*

In 1997, the trial court found that the defendant anticipated, at least as early as 1994, that his assets would be sold and that his income would diminish based on his anticipated retirement. Although not explicitly recognized by the trial court, sale of those assets was likely to generate various State and federal tax obligations. The trial court found that, since the 1994 order, the defendant had been able to generate sufficient income to continue paying alimony in full. The master also found, however, that once the assets were sold, the defendant would be unable to generate income to pay alimony.

The marital master noted that the sale was anticipated. Therefore, the defendant's tax obligations were implicit and obvious. The record contains no evidence that any of the defendant's properties failed to sell for the expected market value. The defendant failed to present evidence as to the disposition of substantial portions of the proceeds from those sales. Even if we assume that the trial court in 1997 was not barred from considering circumstances offered in the 1994 proceedings, the record reveals no substantial change in circumstances from the date of the divorce decree that would justify modification of the amount of alimony. Under these circumstances, modification of alimony amounted to an abuse of discretion.

■ The trial court found that the defendant's retirement and sale of the assets at issue were both anticipated by the parties at the time of the decree. The parties agreed that the defendant would continue to pay the obligation "for the remainder of the Plaintiff's life." While the defendant may have had a change in circumstances since the decree, those changes were foreseeable and actually anticipated. Changes to a party's condition that are both anticipated and foreseeable at the time of the decree cannot rise to the level of

a substantial change in circumstances sufficient to warrant modification of an alimony award. *Cf. Gnirk*, 134 N.H. at 205-06, 589 A.2d at 1012-13; *Nicolazzi v. Nicolazzi*, 131 N.H. 694, 697, 559 A.2d 1335, 1337-38 (1989). "The record gives no indication of extraordinary facts that would justify looking behind the original decree in this case." *Kayle v. Kayle*, 132 N.H. 402, 404, 565 A.2d 1069, 1071 (1989). Accordingly, we reverse the trial court's modification of the defendant's alimony obligation. In light of our holding, we need not address any other issues raised by the plaintiff.

*Reversed.*

HORTON, J., with whom THAYER, J., joined, dissented; the others concurred.

HORTON, J., dissenting: The majority sets forth two changes in circumstances identified by the master — that the defendant had systematically liquidated corporate assets to pay his debts and that he had incurred a significant income tax obligation — and finds them insufficient to meet the threshold required to justify a modification of his alimony obligation. The majority, however, overlooks the master's finding that the difference in the net worth of the parties' assets in 1997 was "probably not more than $50,000.00 . . ., perhaps less." This difference in the value of the parties' assets was more than $150,000 at the time of the divorce in 1989. The gap could only have widened in 1994, when another master found that the defendant's Canaan, Vermont, properties had sold for over $300,000 more than their valuation at the time of the divorce, that his lakeside camp was valued at $100,000 more than it had been at the time of the divorce, and that his automotive repair garage was being sold for $62,500 more than its valuation at the time of the divorce. I respectfully submit that the reduction of the difference in the parties' financial positions from over $150,000 in 1989 to less than $50,000 in 1997 constitutes a substantial change in circumstances, justifying the trial court's modification of alimony.

The majority would conclude that even this dramatic change in the relative financial positions of the parties would not "rise to the level of a substantial change in circumstances sufficient to warrant modification of an alimony award" in that the sale of the assets at issue was "anticipated by the parties at the time of the decree." Such cannot be the case.

In 1989, at the time of the divorce, the $150,000 difference in the parties' financial positions would have been anticipated to generate income to the defendant, which income would have substantially

contributed to, if not fully covered, the $20,000 annual alimony due to the plaintiff. If necessary, it was anticipated that the defendant would sell assets to cover the shortfall. These sales could not reasonably have been anticipated to be so large as to reduce the difference in the parties' financial positions by over $100,000 in the less than eight years between the divorce and the 1997 order, much less in the approximately three years between the 1994 order, when the defendant's assets were found to be valued substantially higher than they had been at the time of the divorce, and the 1997 order.

Moreover, contrary to the master's finding, and as recognized by the majority, the mere sale of assets does not render the assets "[un]available to provide funds to pay alimony." Rather, the sale of assets generates cash, which, in turn, may be invested or used to purchase other assets to generate additional income. It is not until the proceeds from the sale of the assets are paid out in the form of such things as alimony, taxes, payments to creditors, or the purchase of consumer goods that the original assets are rendered unable to generate income.

The trial court is in a unique position to determine when the circumstances have changed so much — in this case, that the relative financial positions of the parties are so different from what would have been anticipated at the time of the divorce — as to justify a modification of alimony. I would hold that the trial court did not "clearly abuse[] its discretion," as required for reversal in this case, *Gnirk v. Gnirk*, 134 N.H. 199, 201-02, 589 A.2d 1008, 1010 (1991), but rather acted within its discretion in determining that the change in the parties' relative financial positions constituted such a substantial change in circumstances.

As a further and independent basis for my dissent, I assert that even under the analysis set forth in the majority opinion, the clear abuse standard is not met. Were our review *de novo*, we would be justified in substituting our judgment for that of the trial court. However, I fail to see how the points relied upon by the majority meet the exceptionally high threshold of *clear* abuse of discretion. I respectfully dissent.

THAYER, J., joins in the dissent.