NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court-Brentwood Family Division
No. 2014-0812


IN THE MATTER OF HOLLY DOHERTY AND WILLIAM DOHERTY

Argued: October 21, 2015
Opinion Issued: April 1, 2016


Primmer Piper Eggleston & Cramer PC, of Manchester (Doreen F. Connor on the brief and orally), for the petitioner.


Shaheen & Gordon, P.A., of Manchester (Jared O'Connor on the brief and orally), for the respondent.


BASSETT, J. The 10th Circuit Court–Brentwood Family Division (Luneau, M., approved by LeFrancois, J.) issued orders after the respondent, William Doherty (Husband), filed a petition to modify his child support and alimony obligations. Husband and the petitioner, Holly Doherty (Wife), both appeal. For the reasons that follow, we affirm in part, reverse in part, vacate in part, and remand.

The relevant facts are as follows. The parties divorced in January 2010. They had two minor children at that time. They entered into a stipulation, which was incorporated into the divorce decree that the trial court approved; in the stipulation, they agreed upon, among other things, the amount of monthly alimony and child support to be paid by Husband.

In July 2014, after one of the parties' children had reached majority, Husband filed a petition seeking a modification of his child support and alimony obligations. Thereafter, Wife filed a motion for contempt, in which she asserted that Husband had significant child support and alimony arrearages. Following a hearing in August 2014, the trial court issued the orders that are the subject of this appeal; in the orders, the trial court modified Husband's child support and alimony obligations and determined the amount of arrearages that he owed.

I. Wife's Appeal

Wife argues that the trial court erred by: (1) including foster care payments that she received in her gross income for the purpose of modifying Husband's child support and alimony obligations; (2) terminating Husband's ongoing alimony obligation; and (3) concluding that it, a family division court, lacked jurisdiction to enforce the parties' agreement to share equally in certain litigation costs. "We will uphold an order on a motion to modify a support obligation absent an unsustainable exercise of discretion." In the Matter of Canaway & Canaway, 161 N.H. 286, 289 (2010). We sustain the findings and rulings of the trial court unless they are lacking in evidentiary support or tainted by error of law. Id.

A. Foster Care Payments

Turning to Wife's first argument, we provide the following background. In their stipulation, the parties agreed that, each month, Husband would pay Wife approximately $3,400 in child support and approximately $1,600 in alimony, for a monthly total of $5,000. They further agreed that alimony would continue for 15 years, and that if the child support obligation was reduced, alimony would be increased so as to maintain a total payment of $5,000 per month.

When deciding whether to modify Husband's child support and alimony obligations, the trial court found that, at the time of the parties' divorce, Wife's employment income was approximately $17,500 per month. However, at the time of the hearing in 2014, the trial court found that her monthly income comprised approximately $3,600 in employment income and approximately $5,700 that she received "as a care provider for [two] disabled adults who reside[d] in her household."

After deciding to include the foster care payments in Wife's current income, the trial court concluded that it would be "fair and equitable" for Husband to pay $968 per month in child support pursuant to the child support guidelines. The trial court further determined that, because there had been a "substantial and unforeseen change in circumstances," a modification of alimony was justified. Given the change in the parties' incomes and

2

expenses, a reduction in Wife's monthly mortgage payment, and Husband's inability to pay alimony in addition to child support and arrearage payments, the trial court decided to terminate Husband's ongoing alimony obligation. Both of these modifications were made retroactive to July 14, 2014 — the date that Wife filed an objection to Husband's petition for modification, in which she sought enforcement of Husband's child support and alimony obligations. See RSA 458-C:7, II (2004) ("Any child support modification shall not be effective prior to the date that notice of the petition for modification has been given to the [opposing party].").

On appeal, Wife argues that, because the foster care payments that she received were "use[d] to clothe, feed and shelter the disabled adults in her care," those funds should not have been included in her gross income for the purposes of modifying Husband's child support obligations. In making this argument, she relies upon the definition of "gross income" under RSA 458-C:2, IV (2004), the definition of income under the federal tax code, and cases from other jurisdictions. Husband counters that the foster care payments were properly included in Wife's income because they constituted "gross income" under RSA 458-C:2, IV. Additionally, he asserts that the federal tax code's treatment of these payments has no bearing on whether they constitute "gross income" under New Hampshire law.

Resolving this issue requires us to engage in statutory interpretation, and, therefore, our review is de novo. See In the Matter of Woolsey & Woolsey, 164 N.H. 301, 303 (2012). We are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. In the Matter of Hampers & Hampers, 166 N.H. 422, 433 (2014). We interpret legislative intent from the statute as written, and we will not consider what the legislature might have said or add words that the legislature did not include. Id. We interpret statutes in the context of the overall statutory scheme and not in isolation. Id.

"Gross income" is defined, in relevant part, as:

> all income from any source, . . . including, but not limited to, wages, salary, . . . and payments from other government programs (except public assistance programs, including aid to families with dependent children, aid to the permanently and totally disabled, supplemental security income, food stamps, and general assistance received from a county or town).

RSA 458-C:2, IV (emphases added). Wife asserts that the foster care payments that she received are excluded from the definition of "gross income" under RSA 458-C:2, IV as "aid to the permanently and totally disabled." We disagree.

3

RSA 167:6, VI (2014) states, in pertinent part, that:

> [A] person shall be eligible for aid to the permanently and totally disabled who is between the ages of 18 and 64 years of age inclusive; is a resident of the state; and is disabled as defined in the federal Social Security Act, Titles II and XVI and the regulations adopted under such act, except that the minimum required duration of the impairment shall be 48 months, unless and until the department adopts a 12-month standard in accordance with RSA 167:3-j.  In determining disability, the standards for "substantial gainful activity" as used in the Social Security Act shall apply, including all work incentive provisions including Impairment Related Work Expenses, Plans to Achieve Self Support, and subsidies. . . .  No person shall be eligible to receive such aid while receiving old age assistance, aid to the needy blind, or aid to families with dependent children.

See also RSA 167:3-j (2014) (concerning minimum duration of impairment for aid to the permanently and totally disabled); Petition of Kilton, 156 N.H. 632, 634 (2007) (noting that the aid to the permanently and totally disabled program "is one of various public assistance programs administered by" the New Hampshire Department of Health and Human Services).

Here, Wife has not provided us with a record concerning the origins of the foster care payments.  Thus, on the record before us, there is no evidence that the payments that she received were actually made under the aid to the permanently and totally disabled program; additionally, there is no evidence that the adults in her care met all of the statutory requirements to establish eligibility for such aid.  See RSA 167:6, VI; see also RSA 167:3-j.  Accordingly, we cannot conclude that those payments can be excluded from the definition of "gross income" under RSA 458-C:2, IV as "aid to the permanently and totally disabled."  See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004) (noting that it is the burden of the appealing party to provide this court with a record sufficient to decide issues on appeal).  Given the state of the record, we also cannot conclude that the payments derived from a "public assistance program[]," constituted "general assistance received from a county or town," or would otherwise fall within one of the other exceptions to "gross income" under RSA 458-C:2, IV.  See id.

Accordingly, given the broad statutory definition of "gross income," see In the Matter of LaRocque & LaRocque, 164 N.H. 148, 153 (2012), and because Wife has not demonstrated that the foster care payments are excluded from that definition, we conclude that the trial court properly included those payments in her "gross income."

4

Nevertheless, Wife asserts that, because the foster care payments are excluded from her gross income for tax purposes under the federal tax code, they should also be excluded from her gross income under RSA 458-C:2, IV. See 26 U.S.C. § 131(a) (2012) ("Gross income shall not include amounts received by a foster care provider during the taxable year as qualified foster care payments."). We disagree. We have repeatedly stated that how the "federal income taxation statutes define 'income' is of little relevance to our interpretation of gross income under the child support guidelines." Hampers, 166 N.H. at 434 (quotation omitted); see also, e.g., In the Matter of Maves & Moore, 166 N.H. 564, 569 (2014) (same); In the Matter of State & Taylor, 153 N.H. 700, 704 (2006) (same). "This is so because the objectives of the child support guidelines differ from the objectives of the federal income taxation statutes." Hampers, 166 N.H. at 435 (quotation omitted).

Moreover, we are not persuaded by Wife's reliance upon cases from other jurisdictions that have held that foster care payments received by a foster parent of children should be excluded from the foster parent's income. See, e.g., In re Marriage of Dunkle, 194 P.3d 462, 466 (Colo. App. 2008) (concluding that foster care payments were properly excluded from parent's gross income because, although received by parent, payments were children's income); Matter of Paternity of M.L.B., 633 N.E.2d 1028, 1029 (Ind. Ct. App. 1994) (same); Bryant v. Bryant, 218 S.W.3d 565, 569 (Mo. Ct. App. 2007) (same). Our task here is to interpret our child support statute and determine whether, under that statute, the foster care payments in this case should be included in Wife's gross income; the treatment of foster care payments under the definition of income in other states' statutes does not control our analysis. See Maves & Moore, 166 N.H. at 567-68.

Finally, to the extent that Wife attempts to assert a distinct and additional argument that "gross income" for child support purposes should be treated differently than income for alimony purposes, see RSA 458:19, IV (2004) (listing factors for trial courts to consider when determining alimony, including the "amount and sources of income" of each party), we decline to address it because it was not adequately developed for appellate review, see In the Matter of Thayer and Thayer, 146 N.H. 342, 347 (2001).

B.  Reducing Gross Income

Wife next asserts that the trial court erred by failing to:  (1) account for the reduction in the payments that she received when one of the foster adults in her care was removed from her home; and (2) deduct expenses that she incurred relating to the care of the foster adults. We agree with Wife on both points.

Before the trial court issued its order on the parties' motions for reconsideration, Wife filed a motion in which she asserted that one of the two

5

foster adults that she cared for no longer resided in her home, and, therefore, the foster care payments that she received each month were reduced from approximately $5,700 to $2,400. Although Husband did not dispute the payment reduction, the trial court never addressed the reduced payments. Under these circumstances, we conclude that Wife's gross income should have been adjusted to reflect the reduction in foster care payments. Cf. Hampers, 166 N.H. at 442 ("It is undisputed that child support should be determined on the basis of present income." (quotation omitted)). The trial court's failure to account for that reduction was, therefore, error.

Moreover, we agree with Wife that the trial court should have deducted from her monthly foster care payments, and, thus, from her gross income, the reasonable and necessary expenditures that she incurred in providing for the foster adult remaining in her care. As we have explained, "gross income" under RSA 458-C:2 means the total amount available to parents for paying child support. See id. at 434; see also Woolsey, 164 N.H. at 306 (explaining that "calculating a parent's ability to pay child support necessitates determining an actual ability to pay" and concluding that the term "self-employment income" in RSA 458-C:2, IV "presupposes the deduction of legitimate business expenses"). Thus, any portion of the foster care payments that were not "available" to Wife should not have been included in her gross income.

Accordingly, we vacate the trial court's determination of Wife's monthly gross income, and remand for the trial court to determine the extent of the foster care payments that remained available to Wife, after deducting from the payments the reasonable and necessary expenses that Wife actually incurred and paid to care for the foster adult who remained in her home. See Woolsey, 164 N.H. at 307 (holding that, to be deductible for purposes of determining "self-employment income" under RSA 458–C:2, IV, business expenses must be "actually incurred and paid" and "reasonable and necessary" for producing income (quotations omitted)). Because we are vacating the trial court's determination of Wife's gross income figure, and because the trial court relied, in part, upon that figure when deciding to modify Husband's child support obligation, we also remand for the trial court to recalculate that obligation. See In the Matter of Albert & McRae, 155 N.H. 259, 265 (2007) (vacating trial court's determination of party's gross income and remanding for recalculation of child support obligation).

### C. Modification of Alimony

Relying primarily upon our decision in Laflamme v. Laflamme, 144 N.H. 524 (1999), Wife next argues that the trial court erred by revisiting Husband's alimony obligation because there was not a "substantial or unforeseen change in circumstances." Wife claims that the "only substantial and unforeseen change in circumstances between the parties" has been her decrease in

monthly income, which, she argues, is not sufficient to justify reexamining Husband's alimony obligation.

As we have stated, "[t]he party requesting an alimony modification must show that a substantial change in circumstances has arisen since the initial award, making the current alimony amount either improper or unfair." Canaway, 161 N.H. at 289 (quotation and brackets omitted). The trial court "must inquire into the changed circumstances of both parties," id. at 290, and "must take into account all of the circumstances of the parties, including the terms of the stipulation," In the Matter of Arvenitis & Arvenitis, 152 N.H. 653, 655 (2005) (quotation omitted). "Changes to a party's condition that are both anticipated and foreseeable at the time of the decree cannot rise to the level of a substantial change in circumstances sufficient to warrant modification of an alimony award." Canaway, 161 N.H. at 289 (quotation omitted).

In Laflamme, the trial court modified the defendant's alimony obligation based upon a finding that the defendant had sold assets and no longer had income to pay alimony due to his retirement. Laflamme, 144 N.H. at 528. On appeal, we reversed the trial court's decision because the sale of assets and the defendant's retirement were both foreseeable and anticipated at the time of the divorce decree. Id. at 528-29. Accordingly, although there may have been a change in circumstances following the divorce decree, we concluded that those changes did not "rise to the level of a substantial change in circumstances sufficient to warrant modification of [the] alimony award." Id.

Laflamme is readily distinguishable. First, as the trial court here observed in its order, the parties' incomes and expenses had changed significantly since the divorce decree. See Canaway, 161 N.H. at 290 (observing that trial court must inquire into changed circumstances of both parties). The trial court found that at the time of the divorce decree, Wife's monthly employment income was approximately $17,500, and her monthly expenses totaled approximately $16,300; Husband's monthly income was approximately $7,700, and his monthly expenses were approximately $10,100. By contrast, the trial court found that at the time of the final hearing on the petition for modification, Wife's monthly employment income was approximately $3,600, and her monthly expenses were approximately $11,300; Husband's monthly income was approximately $7,300, and his expenses were approximately $4,600.

Moreover, unlike Laflamme, in which the trial court found that both the defendant's retirement and the sale of his assets were anticipated by the parties at the time of the divorce decree, see Laflamme, 144 N.H. at 528, here, there is nothing in the record that suggests that the changes to the parties' finances were anticipated or foreseeable. In fact, the trial court explicitly found that "[t]he parties . . . could not have anticipated the changes to their incomes and expenses at the time of the [f]inal [h]earing."

Furthermore, the parties' stipulation contemplated reconsideration of Husband's alimony obligation under certain circumstances. See Arvenitis, 152 N.H. at 655 (explaining that court must take into account all circumstances of parties, including terms of stipulations). The parties agreed that, if Wife was "successful in reducing the monthly mortgage payment" on the marital home, "the parties [would] re-evaluate the support obligations considering the reduction in the mortgage obligation." Wife concedes that she modified the terms of her mortgage, which had the effect of reducing her monthly mortgage payments; according to the trial court, her monthly mortgage payments were reduced from approximately $5,700 to $3,100.

Accordingly, in light of the trial court's finding that there had been unanticipated and unforeseeable significant changes in the parties' finances, the terms of the parties' stipulation, and the reduction in Wife's monthly mortgage payments, we conclude that the trial court sustainably exercised its discretion by revisiting Husband's alimony obligation.

Nonetheless, Wife asserts that, even if the trial court had the discretion to revisit and potentially modify the alimony award, it unsustainably exercised that discretion by eliminating Husband's alimony obligation. According to Wife, the significant decrease in her income supported continuation — rather than elimination — of alimony, and she also argues that the trial court erroneously cited Husband's inability to pay his child support and alimony arrearages as a reason to terminate alimony.

We, however, need not address whether the trial court's order eliminating alimony is unsupportable because of either the dramatic decrease in Wife's income or the trial court's reliance upon Husband's inability to pay certain arrearages. Because we are vacating for redetermination of Wife's gross income for child support purposes, and because the trial court relied, in part, upon that gross income figure when deciding to eliminate Husband's ongoing alimony obligation, we also vacate the alimony award and remand for redetermination of whether and to what extent ongoing alimony is warranted.

D. Jurisdiction of Trial Court

Wife next argues that the trial court, a family division court, erred by concluding that it lacked jurisdiction to enforce a provision in the parties' stipulation. The disputed provision states that the parties would be "equally responsible for payment of any and all legal fees incurred and/or judgments/settlements requiring them to compensate any party" in a separate and ongoing boundary lawsuit. Although the trial court acknowledged the parties' agreement to divide such legal fees, it concluded that it could enforce only "the part of the debt that was incurred as of the date of the Divorce Decree," and that no part of the debt existed at that time. The trial court stated that "[a]ny post-Decree debt to the firm the parties hired in the

8

[boundary] lawsuit needs to be addressed in the context of the lawsuit, or in another forum."

Wife asserts that the trial court had jurisdiction to enforce the parties' agreement to share the legal fees associated with the ongoing boundary lawsuit because such litigation costs were part of the marital debt that it could properly consider when distributing the marital estate. Husband counters that the trial court "correctly held that its jurisdiction extends only as far as dividing the assets and debts of the parties as of the date of divorce, but not afterward," because it has no "legal authority to assign post-divorce debt." We agree with Wife.

Our decision in Maldini v. Maldini, 168 N.H. 191 (2015), is instructive. In Maldini, the parties entered into a "side agreement" during their divorce mediation that allocated certain "yet-to-be-assessed tax liabilities." Maldini, 168 N.H. at 193 (quotation omitted). On appeal, we concluded that the family division had jurisdiction to interpret and enforce that side agreement. Id. at 194-96. We explained that "such unpaid tax liability falls within the broad category of marital debt that the family division can properly consider when distributing the marital estate." Id. at 195. We further explained that "[g]iven that the side agreement at issue concerned marital property, over which the family division has exclusive jurisdiction, that court — and not the superior court — remains the proper forum for addressing issues arising from the agreement." Id. at 196.

Like the side agreement in Maldini that addressed yet-to-be-assessed tax liability, here, the parties' agreement encompassed yet-to-be-assessed expenses associated with the ongoing boundary suit. Thus, as in Maldini, we conclude that these anticipated litigation expenses fall "within the broad category of marital debt that the family division can properly consider when distributing the marital estate." Id. at 195. Because the trial court, a family division court, concluded otherwise, we reverse this aspect of the trial court's order and remand.

II.  Husband's Cross-Appeal

A.  Retroactive Alimony Modification

Husband first argues that the trial court erred by failing to retroactively modify his alimony obligation to a date earlier than July 14, 2014. Although we have vacated the trial court's decision to eliminate his ongoing alimony obligation, we will address this issue because it is likely to arise upon remand. See Figlioli v. R.J. Moreau Cos., 151 N.H. 618, 622 (2005).

In determining July 14 to be the effective date of the alimony modification, the trial court explained that, because it did not receive a return

of service of Husband's petition for modification of child support and alimony, the earliest date to which it could retroactively modify the obligations was July 14 — the date that Wife filed an objection to the petition, thus evidencing receipt of Husband's petition. See RSA 458-C:7, II ("Any child support modification shall not be effective prior to the date that notice of the petition for modification has been given to the [opposing party]."). Husband concedes that, pursuant to RSA 458-C:7, II, the trial court cannot retroactively modify his child support obligation prior to July 14 — the date that notice of the petition for modification was provided to Wife. However, he argues that, because alimony differs from child support and each is governed by different statutes, the same limitation does not apply to alimony modifications. Thus, he argues, the trial court had the ability to modify his alimony to a date prior to July 14. We disagree.

Our decision in In the Matter of Birmingham & Birmingham, 154 N.H. 51 (2006), is controlling. In Birmingham, the respondent argued that the trial court erroneously denied his request to modify child support and alimony retroactive to a date before the petitioner received notice of the respondent's modification petition. Birmingham, 154 N.H. at 57. We, however, concluded that the trial court did not err. Id. at 57-58. We explained that, after our review of case law and statutes concerning child support and alimony, "the trial court correctly ruled that, pursuant to RSA 458-C:7, II, it had no discretion to modify any child support order beyond the date of notice to the petitioner." Id. at 58 (quotations and brackets omitted). Although we observed that "[t]here is no analogous statute that expressly limits the trial court's authority to grant a retroactive modification of alimony beyond the date of notice to the adverse party," we determined that "our case law and our interpretation of the statutes governing the modification of alimony lead us to conclude that the trial court's authority to grant a retroactive modification of alimony beyond the date of notice to the adverse party is similarly limited." Id. (emphasis added).

Thus, based upon Birmingham, we conclude that the trial court in this case had no authority to grant a retroactive modification of alimony to a date earlier than the date Wife received notice of Husband's petition for modification. See id. Nonetheless, because we used the phrase "similarly limited" in Birmingham instead of "identically" limited, Husband contends that notice in the context of retroactive alimony modification is "broader" than notice in the context of retroactive child support modification. Therefore, Husband asserts, the trial court had the authority to grant a retroactive modification of alimony to the date of the parties' stipulation in 2010, which, he claims, provided Wife with actual notice that his alimony obligation would change once the monthly mortgage payments were reduced. We disagree.

Regardless of any ambiguity in the phrase "similarly limited," our decision in Birmingham effectively imported into retroactive alimony

10

modifications the same notice requirements that are applicable to retroactive child support modifications. See id. We also observe that, although in Birmingham we invited the legislature to clarify the statutes governing the trial court's authority to grant a retroactive modification of alimony, id., the legislature has not amended those statutes, see RSA 458:14, :32 (2004). Thus, we assume that our holding in Birmingham conforms to legislative intent. See Ichiban Japanese Steakhouse v. Rocheleau, 167 N.H. 138, 143 (2014). Accordingly, we conclude that the trial court properly ruled that it could not retroactively modify Husband's alimony obligation to a date prior to the date that Wife received notice of Husband's petition for modification — July 14, 2014.

### B. Child Support Arrearages

Husband next argues that the evidence presented to the trial court did not support the trial court's determination of the amount of his child support arrearages. At the hearing on the petition to modify, each party submitted records purporting to demonstrate the amount of child support that Husband had paid and still owed between the date of the parties' stipulation — in which Husband agreed to pay approximately $3,400 per month in child support — and July 2014. According to Wife's records, Husband's child support arrearages amounted to approximately $73,100. Husband's documents, however, purported to demonstrate an arrearage of approximately $47,400. After reviewing the documents provided by the parties, the trial court concluded that Wife's documents were "credible," and that Husband owed approximately $73,100 in child support arrearages.

On appeal, Husband argues that the trial court's decision is not supported by the documentary evidence presented at the hearing. According to Husband, when the trial court adopted Wife's arrearage amount, it erroneously "ignored" the allegedly more accurate records that he submitted, which included bank deposit receipts. In response, Wife contends that we should affirm the trial court's determination of child support arrearages because the trial court found the records that she submitted to be "credible." She argues that our task is not to reweigh the evidence presented to the trial court, and she asserts that, because the trial court's finding is supported by the documentary evidence that she submitted, we should defer to the trial court's finding. See In re Guardianship of E.L., 154 N.H. 292, 296 (2006) (explaining that "we do not reweigh the evidence to determine whether we would have ruled differently," and recognizing that the trier of fact "is in the best position to measure the persuasiveness and credibility of evidence" and that it "lies within the province of the trial court to accept or reject, in whole or in part, whatever evidence was presented" (quotations omitted)).

As a threshold matter, the parties dispute the applicable standard of review. According to Wife, we should review this matter under our

11

unsustainable exercise of discretion standard. By contrast, Husband claims that, because the trial court decided this issue solely based upon documentary evidence, we should give less deference to the trial court's determination. See Lawrence v. Philip Morris USA, 164 N.H. 93, 96-97 (2012) (concluding that, because trial court "relied only upon a paper record and all of the documents from below are available for our perusal, we give less than ordinary deference to the trial court's factual findings" (quotation and ellipsis omitted)). We assume, without deciding, that Husband is correct that a less deferential standard applies.

Nonetheless, even under a less deferential standard, we cannot conclude that the trial court erred by ruling that Husband owes approximately $73,100 in child support arrearages. First, many of the bank deposit receipts that Husband has submitted on appeal — which he claims provide "incontrovertible proof" that his child support arrearages total approximately $47,400 — are illegible. See Bean, 151 N.H. at 250 (explaining that appealing party has burden of providing this court with a record sufficient to decide issues on appeal). Moreover, none of the bank deposit receipts that are legible indicates on its face that the money was actually paid for child support. Accordingly, under these circumstances, we disagree with Husband that the trial court was bound to use his records "as the sole credible source of information for purposes of determining the child support arrearage" and that the trial court erred by relying, instead, upon Wife's records. We, therefore, affirm the trial court's determination that Husband's child support arrearage amounted to approximately $73,100.

> Affirmed in part; reversed in part; vacated in part; and remanded.

DALIANIS, C.J., and CONBOY, J., concurred.