# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2023-0614, <u>In the Matter of Donald Nixon and Roxanne Nixon</u>, the court on May 30, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The petitioner, Donald Nixon (Husband), appeals a decision of the Circuit Court (<u>Cooper</u>, R., approved by <u>Derby</u>, J.) ordering him to pay the respondent, Roxanne Nixon (Wife): (1) $70,000 in retroactive alimony payments; (2) $1,000 per month in modified alimony for two years while Husband obtains a degree in nursing; and (3) $5,000 per month following completion of the nursing program. We reverse in part, vacate in part, and remand.

The trial court found, or the record supports, the following facts. The parties divorced in 2016. Pursuant to a stipulated decree, Husband was to pay Wife $5,000 in monthly alimony for 120 months. At the time, Husband was earning approximately $200,000 annually as an IT director and was eligible for significant additional bonus compensation, while Wife earned approximately $70,000 annually. In 2020, due to the pandemic, Husband experienced a 25% salary reduction and was subsequently laid off, effective June 1, 2021. Husband negotiated a severance package that extended his pay until April of 2022. After unsuccessfully searching for employment in his field, Husband applied for and obtained Veterans Administration (VA) disability benefits in the amount of $1,440.65 per month, and began studying to become a nurse.

In 2020, Husband moved to modify alimony on the ground that his salary reduction was a substantial and unforeseeable change of circumstances. He continued to pay Wife the full $5,000 per month until his severance pay ended. He stopped paying alimony to Wife in March 2022. The trial court never scheduled a hearing or otherwise addressed Husband's 2020 motion to modify alimony, and eventually closed the case.

In June 2022, Wife filed a petition for contempt due to Husband's missed payments. On October 25, 2022, Husband filed a renewed motion to modify alimony. On May 31, 2023, the trial court held a hearing on the parties' motions. As of the date of the hearing, under the terms of the original divorce decree, Husband was $70,000 in arrears. At the hearing Husband testified that his nursing school tuition is paid for by the VA and that he anticipated completing the nursing program in May of 2025. Husband's counsel also

expressed that: "In the nursing field, I'm sure if he gets hired with a big hospital, he will once again, earn a six-figure income." The trial court also received evidence indicating that, since the divorce, Wife's salary had increased considerably to approximately $140,000 annually, and that her retirement account, which held approximately $600,000, exceeded that of Husband's, which held approximately $430,000. Husband, however, also possessed a pension worth $227,000 and $110,000 in an investment account. Husband testified that if he drew on his pension beginning at the date of the hearing, it would yield him approximately $1,000 per month.

Husband sought to reduce his alimony obligation given his changed circumstances. Wife sought retroactive payment of the arrearage and to maintain the current alimony obligation.

Following the hearing, the trial court found that Husband:

does not have the present ability to pay his alimony obligation from his current earnings. However, the Court does find that [Husband] can pay the amount of the arrearage in which the Respondent had every expectation of receiving in order to sustain the lifestyle the parties were accustomed to during the marriage. He shall make payment of $70,000.00 from his savings (or any other asset) to her on or before October 1, 2023.

Additionally, the trial court decided to:

hold in abeyance [Husband's] obligation to pay the full amount . . . per month for a period of two years to enable [him] to complete his studies and to become reemployed at a higher earning rate. At that time, the alimony obligation shall be reinstated in the amount of $5,000.00 per month. In the interim, [Husband] shall make payment in the amount of $1,000.00 per month, which the Court finds he has the ability to access from any number of sources.

Despite finding that Husband was unable "to pay his alimony obligation from his current earnings" and modifying his alimony obligation to $1,000 per month, the trial court calculated Husband's arrearage using the original alimony amount of $5,000 per month from the time he stopped receiving severance in April 2022 until the hearing date in May 2023. Husband moved for reconsideration. The trial court denied Husband's motion for reconsideration and this appeal followed.

We review an order on a motion to modify a support obligation for an unsustainable exercise of discretion. In the Matter of Arvenitis & Arvenitis, 152 N.H. 653, 654 (2005). We consider only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made, and we

will not disturb the trial court's determination if it could reasonably have been made.  In the Matter of Kurowski & Kurowski, 161 N.H. 578, 585 (2011).  We will not substitute our judgment for that of the trial court.  In the Matter of Braunstein & Braunstein, 173 N.H. 38, 47 (2020).  Nor will we reweigh the equities.  Id.  "We sustain the findings and rulings of the trial court unless they are lacking in evidentia[ry] support or tainted by error of law."  In the Matter of Canaway & Canaway, 161 N.H. 286, 289 (2010).

"The party requesting an alimony modification must show that a substantial change in circumstances has arisen since the initial award, making the current alimony amount either improper or unfair."  In the Matter of Doherty & Doherty, 168 N.H. 694, 701 (2016) (quotation and brackets omitted).  "The trial court must inquire into the changed circumstances of both parties and must take into account all of the circumstances of the parties, including the terms of the stipulation."  Id. (quotation and citations omitted).  While the court must inquire into the changed circumstances of both parties, the burden of proof rests with the party seeking a modification.  See id.

On appeal, Husband argues that the trial court's decision improperly "results in [him] having to pay an alimony arrearage out of assets that had already been divided in the underlying divorce."  Wife counters that the trial court did not err when it required Husband to pay the alimony arrearage from his assets.  We agree with Wife.

In Walker v. Walker, 133 N.H. 413 (1990), we addressed an issue analogous to Husband's argument.  There, the husband argued that the continuation of alimony, at a reduced amount, after his retirement equated to a modification of the parties' property settlement as it "may require him to liquidate some of his non-productive assets" to continue to make payments.  Walker, 133 N.H. at 416, 419.  On appeal, we stated:

> Specifically, we reject [the husband's] argument that the alimony order is in effect an impermissible modification of the . . . property settlement, since it may require him to liquidate some of his non-productive assets to generate enough income to pay the alimony.  The property settlement effected a division of assets in accordance with their values.  It does not entitle one party to a divorce to maintain a certain investment or retain a certain asset if a more productive use of this value would enable that party to satisfy a support obligation.

Id. at 418-19.  Accordingly, we read Walker as endorsing the concept that, when it is undisputed that the obligor is receiving limited income, the trial court may order an obligor to pay alimony from the assets that he was awarded at the time of the divorce.  See id.

3

Both parties make reference to In the Matter of Canaway & Canaway, 161 N.H. 286 (2010). In that case, the husband sought to terminate alimony citing his poor health and lack of employment. Canaway, 161 N.H. at 289. This court affirmed the trial court's denial of alimony termination on the basis that the husband held various assets and "consulted for one of his fiancée's businesses for no compensation, allowed his fiancée to run her business out of his home without paying rent, and required only minimal household contributions from his fiancée." Id. at 290.

In Canaway the trial court did not order the liquidation of the husband's assets, but instead, recognized that more productive use of the husband's assets, for example, charging his fiancée rent for the use of his property for her business, would enable him to satisfy his support obligation. See id. at 289-90 (affirming trial court finding that "the husband . . . chose to support his fiancée rather than paying alimony"). Further, in Canaway this court considered it significant that the trial court found that the wife remained dependent on alimony. Id. at 291 ("[T]he wife's budget is approximately $500 in deficit each month, and, even with the alimony payments, she 'is living in a delicate financial balance.'").

In the instant case, given that the Husband's first motion to modify alimony was filed in 2020, the trial court had the statutory authority to modify the alimony award from 2020 onward. See In the Matter of Birmingham & Birmingham, 154 N.H. 51, 58 (2006); RSA 458:19-aa, I-a (Supp. 2024) ("If contested, an alimony modification shall not be effective prior to the date that the notice of the petition for modification was given to the other party."). The trial court found that Husband lacks the ability to pay alimony "from his current earnings," but that Husband "can pay" the $70,000 arrearage and $1,000 per month going forward "from any number of sources." Given that a trial court may require an obligor to pay an arrearage out of his assets, the trial court's factual findings are not inherently contradictory. However, the trial court did not make factual findings that squarely address the considerations at play in Canaway and Walker — particularly: (1) whether the use of Husband's assets could be changed such that they would generate sufficient income to enable Husband to satisfy his support obligation, Walker, 133 N.H. at 419; and (2) whether Wife, whose income has approximately doubled during the six years that Husband was making significant monthly alimony payments, "has a continuing need for alimony," given her changed circumstances. Canaway, 161 N.H. at 291; see also In the Matter of Fowler & Fowler, 145 N.H. 516, 520 (2000) ("The primary purpose of alimony is rehabilitative. . . . [It] is designed to encourage the recipient to establish an independent source of income." (quotation omitted)). Nor did the trial court find that Husband had squandered his assets. Additionally, the trial court did not make a factual finding regarding why it modified Husband's support obligation beginning on the date of the hearing rather than using the date on which Husband stopped receiving

4

severance pay, when, by the date of the hearing, Husband had been unemployed for nearly two years and without severance pay for over one year.

Accordingly, the trial court's ruling with respect to the $70,000 retroactive alimony payment and the monthly $1,000 payment for two years from the date of the trial court order is vacated and remanded for further factual findings and legal analysis consistent with this order. On remand, the trial court may consider both whether a more productive use of Husband's assets would enable him to satisfy his support obligation and, if not, whether the sale of some portion of his assets is necessary. Additionally, if it determines that any arrearage is owed, the trial court should consider whether to use the modified alimony amount of $1,000 per month rather than the original alimony amount of $5,000 per month. See Walker, 133 N.H. at 418 (it was error to calculate retroactive alimony "on the basis of the prior alimony level").

Husband next contends the trial court unsustainably exercised its discretion when it reinstated his original, $5,000 alimony obligation prospectively, two years from the issuance of the trial court's order, without substantive evidence of Husband's future earnings. Wife argues that Husband presented evidence at trial that once he is employed as a nurse he will earn a six-figure income and that the trial court's decision to reinstate Husband's original alimony obligation upon his graduation from nursing school was equitable. We agree with Husband.

The record before the trial court regarding Husband's future earnings consists of his counsel's offer of proof that "if he gets hired with a big hospital, he will once again, earn a six-figure income." The assertion is speculative as Husband's actual circumstances following the completion of the nursing program are unknown. Cf. In the Matter of Nassar & Nassar, 156 N.H. 769, 776 (2008) ("Because RSA 458:19, IV(b) requires alimony awards to be based upon the condition of the actual parties, and not solely the economy at large, the trial court erred by making the alimony award subject to the consumer price index."). Moreover, even a "six-figure income" may not warrant the reinstatement of the $5,000 per month payments, which Husband stipulated to when he earned base pay of approximately $200,000 with significant additional bonus compensation. Therefore, the trial court's ruling that "the alimony obligation shall be reinstated in the amount of $5,000.00 per month" two years from the August 7, 2023 order is reversed. Any future modifications of alimony shall be based upon the actual condition of the parties at the time the modification is to be implemented. See id.

5

We have considered Wife's remaining arguments, and have concluded that they do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993). Accordingly, we reverse in part, vacate in part, and remand.

<u>Reversed in part; vacated in part; and remanded</u>.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**