Grafton
No. 95-797

LAKEVIEW HOMEOWNERS ASSOCIATION

v.

MOULTON CONSTRUCTION, INC.

April 29, 1997

*Baker & Hayes*, of Lebanon (*William A. Baker* and *Lawrence A. MacLeod, Jr.* on the brief, and *Mr. MacLeod* orally), for the plaintiff.

*Sulloway & Hollis*, of Concord (*Jeffrey S. Cohen* and *William D. Pandolph* on the brief, and *Mr. Cohen* orally), for the defendant.

BRODERICK, J. The defendant, Moulton Construction, Inc., appeals the Superior Court's (*Lynn*, J.) denial of its motion to strike a default and permit a late entry of appearance, and the Court's (*Morrill*, J.) subsequent damages assessment. We affirm in part, vacate in part, and remand.

In February 1992, the plaintiff, Lakeview Homeowners Association, initiated a negligence action against the defendant to recover the costs of correcting alleged defects in the construction of septic fields. John A. Graf, of the law firm McLane, Graf, Raulerson & Middleton, entered an appearance for the defendant in April 1992. On July 29, 1993, the McLane firm informed the defendant by letter that it was "withdrawing from representation of [the defendant] in

all litigated and general corporate matters." The McLane firm advised the defendant "in the strongest terms to retain new counsel as soon as possible."

Superior Court Rule 20 provides:

> Whenever the attorney of a party withdraws his appearance, and no other appearance is entered, the Clerk shall notify the party by mail of such withdrawal, and, unless he appears by himself or attorney by a date fixed by the Court, the action will be dismissed, non-suited, discontinued or defaulted, as the case may be.

Pursuant to this rule, the clerk of the Grafton County Superior Court notifed the defendant by letter dated August 11, 1993, that the McLane firm had withdrawn as counsel, and that the defendant was required to secure new counsel on or before Friday, September 10, 1993, or suffer default. The court mailed this notice to the defendant at its post office box address.

The defendant filed no appearance following the McLane firm's withdrawal. In late September 1993, the defendant learned it had been defaulted. Carl L. Moulton, the defendant's president, called the court and was told of the August 11 letter. He subsequently wrote the clerk, asserting that he was "neither aware nor notified of any deadline for naming new counsel," and that the defendant's "active mailing address" was not, in fact, the post office box to which the court had sent the August 11 letter.

In October 1993, the defendant moved to strike the default and to enter a late appearance, arguing that the failure to appear was due to "accident, mistake or misfortune" and not neglect. *See* Preface SUPER. CT. R. By affidavit, Mr. Moulton explained that after he learned the August 11 letter had been sent to the defendant's post office box, he searched his mother's house for the letter. His mother, Mary J. Moulton, was the defendant's former treasurer and had a key to the box; then nearly eighty years old, she was responsible for collecting mail delivered to the post office box and bringing it to the defendant's office "once or twice a month." On all other occasions, Bruce Washburn, the defendant's controller, would collect mail delivered to the post office box.

Mr. Moulton stated he was aware that his mother's memory had been failing and that she "did not always deliver the mail to the office in a timely manner." He alleged, however, that he did not discover until after the default that his mother's memory problems stemmed from a neurological condition. Mrs. Moulton's physician filed an affidavit stating that the condition "would be a likely cause of the loss of any important documents which came into her

possession." On October 23, 1993, Mr. Moulton found the August 11 letter at his mother's house, along with "a number of other pieces of corporate correspondence . . . which [he was] not aware had been received."

In January 1994, after considering the affidavits and arguments by counsel, the trial court denied the defendant's motion. The court ruled that "based upon the arguments . . . the failure to enter [an] appearance in a timely fashion was the result of neglect as opposed to any accident." As for Mrs. Moulton's failure to bring the August 11 letter to the defendant's office, the court suggested that in trusting her with this responsibility the defendant did so "at [its] peril." This appeal followed.

■ The defendant now argues that the trial court erred in finding that the failure to appear was due to neglect. Under the superior court rules, the trial court has the authority to grant "[r]elief from failure to comply with the provisions of any rule . . . on such terms as the Court may order, where, due to accident, mistake or misfortune and not through neglect, justice so requires." Preface SUPER. CT. R.; *see Cote v. Cote*, 123 N.H. 376, 377, 461 A.2d 566, 567 (1983). "The trial court's decision whether to strike an entry of default is within its discretion; we will not disturb such a ruling unless the court abused that discretion or erred as a matter of law." *O'Brien v. Continental Ins. Co.*, 141 N.H. 522, 523, 687 A.2d 262, 263 (1996).

■ "Accident, mistake or misfortune" has been defined as "something outside of one's control, or something which a reasonably prudent [person] would not be expected to guard against or provide for." *Morriss v. Towle Hill Associates*, 138 N.H. 452, 454, 641 A.2d 1015, 1017 (1994) (quotation omitted). The words "import something that is outside the expectation or control of [a party] or [its] attorney." *Fome Associates v. Palmer*, 122 N.H. 985, 986, 453 A.2d 1274, 1275 (1982). The question whether accident, mistake or misfortune occurred is for the trier of fact, and its finding will be conclusive unless it is unsupported by the evidence. *Morriss*, 138 N.H. at 454, 641 A.2d at 1017.

■ In this case, the record supports the trial court's ruling that the defendant's failure to appear was due to neglect, rather than accident, mistake or misfortune. By his own admission, the defendant's president was aware that Mrs. Moulton's memory had been failing and that in the past she "did not always deliver the mail to the office in a timely manner." Ensuring prompt mail delivery was well within Mr. Moulton's sphere of control as president of Moulton

Construction, Inc. His awareness of his mother's limitations made the possibility that she could not complete this task one which a reasonably prudent person would guard against. *See id.* Accordingly, the trial court did not err in concluding that the defendant's failure to appear — and the resulting default — was due to "its own neglect and the manner in which it chose to conduct its business." *D'Agincourt v. Anderson Foreign Motors, Inc.*, 119 N.H. 476, 479, 402 A.2d 1340, 1342 (1979).

The defendant nonetheless argues that the trial court erred in finding neglect because the court clerk did not send the August 11 letter to the defendant's "address of record." Under Superior Court Rule 2, "[w]henever notice to a party is required, notice to the last mail address on file shall be deemed notice to, and binding on, the party." In this instance, the defendant did not demonstrate which of its addresses was, in fact, the last mail address on file. For defendants, "the last mail address on file" typically refers to the mail address on the appearance card, not the address on the plaintiff's writ. *See* SUPER. CT. R. 2. The record in this case is silent as to the address on the appearance card. Moreover, while the post office box to which the court clerk sent the August 11 letter was not the address indicated on the plaintiff's writ, it is clear that the post office box was the address for the defendant used by the defendant's former counsel, the McLane firm, and that it was the address at which the defendant received "corporate correspondence," notwithstanding Mr. Moulton's claim that the post office box was used only for "third class mail and magazines." Consequently, we cannot say the trial court erred in finding neglect simply because the court clerk sent the August 11 letter to the defendant's post office box.

The defendant also appeals the trial court's damages assessment. Following the denial of the defendant's motion to strike, the trial court awarded the plaintiff $226,053.34 in damages plus interest and costs. This amount included $44,891.80 for damages incurred by the plaintiff for the maintenance, repair, and replacement of underground pipes and pumps serving the plaintiff's leach fields. The trial court acknowledged in its order on damages that the plaintiff's writ did not allege problems with the pumps and piping. The court noted, however, that the plaintiff included these damages in a July 1995 summary of claimed expenses, and that the defendant "was not surprised by these claims and was not prejudiced by their admission."

The defendant maintains that the plaintiff is not entitled to damages for the problems associated with the pipes and plumbing

because it failed to allege these claimed expenses in its writ. Superior Court Rule 24 provides that "[n]o plaintiff shall have leave to amend, unless in matters of form, after a default, until a notice upon the defendant, to show cause why the amendment should not be allowed, has been served." In this case, the plaintiff did not move to amend its writ following the defendant's default.

It has long been our practice that "[i]n this jurisdiction, pleadings are treated liberally." *Berlinguette v. Stanton*, 120 N.H. 760, 762, 423 A.2d 289, 290 (1980). We have accordingly held that a claim may be adequately pled by a writ read together with additional facts adduced at a hearing, when the defendant does not object, *see DiFruscia v. N.H. Dept. of Pub. Works & Highways*, 136 N.H. 202, 204, 612 A.2d 1326, 1328 (1992), and we have suggested that a lack of precision in pleadings may be cured by information obtained in pretrial discovery, *see Dunn & Sons, Inc. v. Paragon Homes of New Eng., Inc.*, 110 N.H. 215, 218, 265 A.2d 5, 8 (1970).

These principles are inapposite in this instance, however, as it was not until 1995, well after the defendant's default, that the plaintiff introduced facts supporting the expenses associated with the "pumps and piping" problems — problems to which the writ did not refer on its face. While the defendant may not have been surprised by the additional claimed expenses, it was entitled to notice of what was, in effect, an amendment to the original writ following the default, and to an opportunity "to show cause why the amendment should not be allowed." SUPER. CT. R. 24. The defendant having failed to receive this notice, the trial court erred in considering these claimed expenses in assessing damages. We accordingly vacate the trial court's order on damages and remand to allow the plaintiff an opportunity to seek leave to amend its writ with appropriate notice to the defendant pursuant to Superior Court Rule 24.

*Affirmed in part; vacated in part; remanded.*

BROCK, C.J., dissented; the others concurred.