Salem Family Division
No. 2005-089

IN THE MATTER OF KAREN BIRMINGHAM AND GREGORY BIRMINGHAM

Argued: June 8, 2006
Opinion Issued: August 4, 2006

*Law Offices of Edward W. Richards & Associates, P.C.*, of Nashua (*Edward W. Richards* and *Tanya Pardo* on the brief, and *Mr. Richards* orally), for the petitioner.

*Wiggin & Nourie, P.A.*, of Manchester (*Carol L. Kunz* on the brief and orally), for the respondent.

GALWAY, J. The respondent, Gregory Birmingham, appeals an order of the Trial Court (*DiMeo*, J.) denying his motion to: (1) strike the default judgment and vacate the final divorce decree; and (2) vacate or modify the division of property in the final decree. He also appeals an order of the Marital Master (*DalPra*, M.) denying his request that the modification of child support and alimony be retroactive to the date of the temporary agreement rather than the date of notice to the petitioner, Karen Birmingham. We affirm.

The record supports the following facts. In July 2002, the petitioner filed for divorce. The parties had two minor children. Throughout the divorce proceedings, the petitioner was represented by counsel while the respondent appeared *pro se*. Until approximately January 2001, the respondent was employed as a software developer and consultant at a company in Merrimack. He was reportedly unemployed from January 2001 until approximately January 2002.

In September 2002, both parties appeared at the Salem Family Division for a Case Manager Conference. At that conference, the respondent

represented that since approximately January 2002, he had been employed by TransWorld, Inc. (TWI) at a salary of $180,000 per year, and submitted a financial affidavit disclosing his monthly income as $15,000. Based upon these representations, the parties reached a temporary agreement, which granted the petitioner use of the marital residence and included child support and alimony based upon a child support guidelines worksheet and a temporary uniform support order. The respondent also agreed to pay some of the marital debt on or before October 1, 2002. Both parties and the case manager signed the temporary agreement, and the Marital Master (*Kelly*, M.) approved it that same day. The respondent failed to comply with the temporary agreement, and the petitioner filed a motion for contempt in October 2002.

In November 2002, the Trial Court (*Taube*, J.) conducted a temporary hearing at which it considered the petitioner's motion for contempt. At that hearing, the respondent testified that he had received none of his expected salary from TWI and was no longer employed by it. He testified that he was seeking other employment and had no other income. He voluntarily agreed to provide the petitioner's counsel with information regarding his employment with TWI. The trial court withheld an immediate finding of contempt and issued an order requiring the respondent to either pay all of the obligations identified in the temporary agreement or provide the petitioner's counsel with proof of his inability to pay the required amount by December 8, 2002.

The respondent did not comply with the trial court's order and on December 30, 2002, the petitioner filed a notice of noncompliance. In January 2003, the petitioner filed a motion to compel the respondent to produce documents that had been ordered by the court and that the respondent had agreed to produce; the court granted that motion. The respondent neither filed an objection nor produced any of the requested documents. Also in January 2003, the petitioner filed a motion for final default and a proposed final default order.

In February 2003, the respondent filed a motion for relief, essentially setting forth, among other things, his request for sole legal and physical custody of the minor children, an equitable division of all marital assets, and a modification of the existing child support, alimony, visitation, and debt obligations set forth in the September 2002 temporary agreement and the trial court's November 2002 order. The court scheduled a hearing in May 2003 and provided notice that the hearing would include the motion for final default.

The Trial Court (*Taube*, J.) conducted a hearing in May 2003, at which it heard testimony from both parties as well as a representative from the office of child support enforcement, who was involved in the collection of

child support and alimony orders. At the conclusion of the hearing, the trial court requested that the petitioner file a revised proposed default order with findings regarding the respondent's lack of response to court orders, the respondent's contact—or lack thereof—with his minor children, and the disposition of assets, with a copy to be sent to the respondent for his response. It also stated that it would issue a final order once this was completed. The petitioner submitted the requested revised proposed default order to the court on May 21, 2003, and provided the respondent with a copy. The respondent failed to respond and the court issued a final default order on June 16, 2003. The respondent filed no motion to reconsider or strike the default order, or otherwise challenge that order for approximately one year.

According to the respondent, he obtained employment in November 2003 and retained legal counsel at that time. In approximately June 2004, the respondent filed an expedited motion to bring forward and modify, requesting, among other things, that the court vacate the final decree and default judgment, vacate or modify the division of property, and vacate or modify child support and alimony. The Trial Court (*DiMeo*, J.) conducted a hearing in September 2004, limiting the issue to whether, as a matter of law, the final decree could be stricken or vacated. In December 2004, the court denied the respondent's motion to vacate the final decree and property division, ruling that: (1) the final decree could be vacated only upon a showing of accident, mistake, or misfortune; and (2) without such a showing, the final property division cannot be modified. The respondent's timely motion to reconsider was denied.

In February 2005, the Salem Family Division (*DalPra*, M.) conducted a hearing on the respondent's motion to modify alimony and child support and reduced both the child support and alimony retroactive to August 20, 2004. The respondent filed a timely motion to reconsider, arguing, among other things, that the modification should be retroactive to September 23, 2002, the date of the temporary agreement. The court denied the respondent's motion to reconsider, ruling that it had no discretion to modify any child support order earlier than the date the petitioner received notice of the respondent's motion to modify, which was August 20, 2004.

On appeal, the respondent argues the trial court erred in: (1) denying his motion to strike the default judgment and vacate the divorce decree; (2) denying his motion to modify the property division and ruling that property divisions in a divorce may never be modified under New Hampshire law; and (3) ruling that it had no discretion to retroactively modify a child support order beyond the date of notice to the petitioner.

The respondent first contends that: (1) the default judgment was impermissibly based upon the respondent's failure to provide discovery when no formal discovery was propounded upon him; (2) the trial court failed to provide him with adequate notice that the May 2003 hearing would include entry of a final decree and distribution of marital property; (3) the trial court failed to make any findings to support its unequal division of the marital property and allocation of debt; and (4) the trial court failed to make findings to support its inequitable award of alimony and child support. The petitioner, however, counters that the respondent failed to file a timely motion to reconsider or timely appeal the default judgment and final decree, thereby waiving any subsequent appeals.

■ We will not disturb a decision denying a motion to vacate a default judgment unless the trial court erred as a matter of law or engaged in an unsustainable exercise of discretion. *Brito v. Ryan*, 151 N.H. 635, 637 (2005); *see State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion).

"In all actions at law or in equity, in which a verdict or decree is entered ... all appeals relating to the action shall be deemed waived and final judgment shall be entered ... unless the Court has otherwise ordered, or unless a notice of appeal has then been filed with the Supreme Court pursuant to its Rule 7." SUPER. CT. R. 74. Where no motion, or an untimely motion, has been filed after a verdict or decree, a final judgment shall be entered thirty-one days from the date on the Clerk's written notice of the court's decision. SUPER. CT. R. 74(a); *see* SUPER. CT. R. 209 (providing that upon the default of either party, the decree will not become final until expiration of the appeal period, pursuant to Superior Court Rule 74). To be timely, a motion for reconsideration or other post-decision relief "shall be filed within ten (10) days of the date on the Clerk's written notice of the order or decision." SUPER. CT. R. 59-A(1).

In the instant case, after conducting a full evidentiary hearing, the trial court issued a final default order on June 16, 2003. The clerk's notice of that decision stated, in pertinent part:

> This matter will become final on 7/18/2003, known as the Judgment Day, if no objections or appeals are filed. Objections must be filed with this court within 10 days of the date of the Notice of Decision, Appeals to the Supreme Court within 30 days.

The respondent received express, written notice that if he failed to file either an objection or an appeal of the decision, the default order and final divorce decree would become final on July 18, 2003. The respondent took no action until June 2004—almost twelve months after the deadline.

The respondent argues that the trial court erroneously ruled that his motion to strike the default judgment and vacate the final decree must be grounded upon accident, mistake, or misfortune. He contends that this ruling is contrary to longstanding principles of equity, which allow courts to correct or modify decrees for good cause shown.

In this case, however, the respondent's expedited motion requesting the court to, among other things, strike the default judgment and vacate the final decree essentially sought a new hearing on the merits before the trial court. *See Case v. Case*, 121 N.H. 647, 652 (1981) (petition to bring forward prior decree construed as motion for new trial). RSA 526:1 (1997) states: "A new trial may be granted in any case when through accident, mistake or misfortune justice has not been done and a further hearing would be equitable." "Accident, mistake or misfortune has been defined as something outside of [the respondent's] control, or something which a reasonably prudent person would not be expected to guard against or provide for." *Lakeview Homeowners Assoc. v. Moulton Constr.*, 141 N.H. 789, 791 (1997) (quotations omitted). Whether accident, mistake, or misfortune occurred is determined by the trier of fact, and its finding will be conclusive unless it is unsupported by the evidence. *Id.*

■ The record supports the trial court's finding that there was no accident, mistake, or misfortune that occurred in the instant case. Nothing that was reasonably beyond the respondent's control precluded him from acting in a timely manner to challenge the default judgment and final decree. Thus, we conclude the trial court's ruling was not an unsustainable exercise of discretion.

■ The respondent argues that as a *pro se* litigant, he was ill-equipped to either: (1) understand or satisfy the "court's burden"; or (2) respond to the court's inequitable orders and, therefore, he "more than satisfies the 'good cause' requirement of [*sic*] necessary to vacate the decree." "*Pro se* litigants, however, are bound by the same procedural rules that govern parties represented by counsel." *Appeal of Demeritt*, 142 N.H. 807, 811 (1998); *see Faretta v. California*, 422 U.S. 806, 834-35 n. 46 (1975) (recognizing that the right of self-representation is not a license to not comply with the relevant procedural rules). The respondent was informed of all applicable procedural deadlines throughout the entire proceedings. He, however, took no timely action to challenge the default judgment and final decree despite receiving written notice that the divorce decree would become final if he failed to do so. He cannot avoid the consequences of his failure to comply with the procedural rules simply because he appeared *pro se*. To conclude otherwise would undermine the finality of judgments involving a *pro se* litigant and prejudice parties who are represented by

counsel. Accordingly, the trial court did not err when it denied the respondent's untimely request to strike the default judgment and vacate the final decree. Furthermore, for the same reasons, we conclude the trial court did not err in denying the respondent's motion to vacate the property division set forth in the final decree. *See In the Matter of Gronvaldt & Gronvaldt*, 150 N.H. 551, 554 (2004) (we will not overturn trial court's determination of property distribution absent unsustainable exercise of discretion).

Next, the respondent argues the trial court erroneously denied his motion to modify the property division set forth in the final divorce decree. Specifically, he contends the trial court erroneously concluded that a property division in a divorce may never be modified under New Hampshire law. He argues that the trial court has the equitable power to modify a prior property division.

 "A property settlement in a divorce decree is a final distribution of a sum of money or a specific portion of the spouses' property and is not subject to judicial modification on account of changed circumstances." *Sommers v. Sommers*, 143 N.H. 686, 689 (1999). "[S]uch a property distribution will not be modified unless the complaining party shows that the distribution is invalid due to fraud, undue influence, deceit, misrepresentation, or mutual mistake." *Id.* (quotations omitted). After reviewing the record as well as the parties' briefs and arguments, we conclude that the trial court correctly ruled that it could not modify the property division in the final decree. The respondent failed to show that the property division was invalid for any of the foregoing reasons. Instead, he argued that the property division was inequitable and was not supported by written reasons as required by RSA 458:16-a, IV (2004). However, as the trial court correctly noted, these issues should have been raised on appeal, and they did not meet the respondent's burden of showing fraud, undue influence, deceit, misrepresentation, or mutual mistake. Therefore, we cannot conclude that the trial court's denial of his motion to modify the property division was an unsustainable exercise of discretion.

Finally, the respondent argues the trial court erroneously denied his request to modify child support and alimony retroactive to September 23, 2002, the date of the temporary agreement, instead of August 20, 2004, the date the petitioner received notice of the respondent's modification petition. He contends that the court's ruling "ignores the unique factual circumstances in this case"; namely, that the original award of child support and alimony was based upon an inaccurate assessment of his income. He also argues that the trial court has discretion to allow credit

toward arrearages under certain circumstances and asserts that it failed to consider the disproportionate division of property and allocation of marital debt in this case.

RSA 458-C:7, II (2004) provides, "Any child support modification shall not be effective prior to the date that notice of the petition for modification has been given to the [opposing party]." RSA 458:32 (2004) provides, in pertinent part: *"Upon motion and notice to the adverse party in the proceeding,* . . . the court may modify or revise its orders and decrees." (Emphasis added.) Additionally, "[e]xcept as otherwise provided in RSA 458:19, I and VII, the court, *upon proper application and notice to the adverse party,* may revise and modify any order made by it . . . ." RSA 458:14 (2004) (emphasis added). We have also recognized that a marital master "[has] the power to order retroactive alimony as far back as the time the [party seeking alimony] filed [the] motion." *Walker v. Walker,* 133 N.H. 413, 418 (1990); *see* 3A C. DOUGLAS, NEW HAMPSHIRE PRACTICE, FAMILY PRACTICE § 18.09, at 22 (2002) ("master traditionally has the discretion to order retroactive alimony as far back as the time the motion was filed").

 Thus, the trial court correctly ruled that, pursuant to RSA 458-C:7, II, it had "no discretion to modify any child support order beyond the date of 'notice' to the [petitioner]," which was August 20, 2004. There is no analogous statute that expressly limits the trial court's authority to grant a retroactive modification of alimony beyond the date of notice to the adverse party. However, our case law and our interpretation of the statutes governing the modification of alimony lead us to conclude that the trial court's authority to grant a retroactive modification of alimony beyond the date of notice to the adverse party is similarly limited. *See Walker,* 133 N.H. at 418; RSA 458:32; RSA 458:14. If the legislature wishes to clarify this issue, it is free to address it.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.