# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2018-0389, <u>Patrick Stack & a. v. Merriewoode Village, Inc.</u>, the court on March 14, 2019, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Merriewoode Village, Inc., appeals orders of the Superior Court (<u>Ruoff</u>, J.) declining to strike a default judgment entered in favor of the plaintiffs, Patrick Stack, Kim Stack, Anita Pelletier, and Catherine Phillips, and in favor of the intervenor, the Town of Stoddard, and entering a final decree, following a hearing, in favor of the plaintiffs and town, <u>see</u> <u>Super. Ct. R.</u> 42(e). The defendant argues that the trial court erred by: (1) allegedly receiving and considering an <u>ex</u> <u>parte</u> communication; (2) denying its motion to strike the default; and (3) denying its motion to dismiss for lack of subject matter jurisdiction based upon the failure to join allegedly necessary parties.

The record establishes the following facts. The plaintiffs and defendant have property interests in lots along the western shore of Highland Lake in the Town of Stoddard. The plaintiffs' lots abut one another, and the lot of plaintiffs Pelletier and Phillips abuts the defendant's lot to its south. The plaintiffs primarily access their properties by boat. However, since prior to 1975, the plaintiffs' properties have also been accessed by motor vehicle over a roadway that traverses the defendant's lot. The present litigation ensued in 2016 after the defendant effectively deprived the plaintiffs' lots of motor vehicle access by locking a gate across the roadway and placing boulders adjacent to the gate.

The plaintiffs sought declaratory and injunctive relief establishing their right to use the portion of the roadway that crosses the defendant's property on grounds that it constitutes a class VI highway, and that they have an easement in it. The town intervened, asserting that a portion of the roadway is a class VI highway. The defendant filed a counterclaim seeking to establish its right to bar access to the roadway. In September 2016, the Trial Court (<u>Kissinger</u>, J.) denied the parties' requests for preliminary injunctions, ruling that the plaintiffs had failed to demonstrate a likelihood of success on the merits as to their claims of prescriptive easement, "easement by acquiescence,"[1] and

---

[1] In rejecting this claim, the trial court observed that "the phrase 'easement by acquiescence' appears nowhere in New Hampshire law," and that "[a]n extrajurisdictional search for the phrase yields similarly sparse results."

equitable estoppel, and that the defendant had failed to establish a danger of irreparable harm. The trial court observed that the parties had negotiated an agreement granting the plaintiffs access to the roadway to obtain septic tank services. Thereafter, the parties agreed to stay the case.

In 2016, the superior court adopted a policy (e-mail policy), published on its website, providing that "[c]ounsel of record and pro-se litigants will receive all non-confidential orders and notices via e-mail from the court. Pro-se parties without email will receive notices and orders via U.S. mail." The e-mail policy was implemented in the Cheshire County Superior Court, where this case was pending, on September 1, 2016. The e-mail policy warned that "pro se part[ies] and attorneys must be sure that the court [e-mail] addresses are not blocked by firewalls or spam filters."

In July 2017, the defendant erected a berm across the roadway, rendering the roadway impassable. Shortly thereafter, counsel for the defendant withdrew. At that point, the case was stayed. The trial court issued notices of the withdrawal on July 13 and August 30, 2017, see Super. Ct. R. 17(f), and warned the defendant in the second notice that its failure to file an appearance would result in default, see Super. Ct. R. 17(b) & (f).

In September 2017, Thomas Migliore, Jr. filed a motion seeking permission to represent the defendant as its non-lawyer representative. See Super. Ct. R. 20. Migliore also filed: (1) an affidavit pursuant to Superior Court Rule 20(a)(2) (non-lawyer affidavit), in which he acknowledged that he "must comply with the Rules of Professional Conduct as set forth in Professional Conduct Rule 8.5," see Super. Ct. R. 20(b); (2) an appearance, in which he disclosed his e-mail address, see Super. Ct. R. 17(a) (requiring appearance to include e-mail address); and (3) a printout of an e-mail that had been sent to the same e-mail address disclosed in the appearance, that had been forwarded from that address to another recipient with the message, "Sent from my iPhone," and that contained authorizations from the defendant's officers for him to represent it (e-mail authorization). Over the plaintiffs' objection, the Trial Court (Ruoff, J.) granted Migliore's motion to represent the defendant.

On October 18, 2017, the trial court issued a notice of hearing for a status conference to be held on November 3, 2017. The notice warned that "[i]f you do not appear at this hearing, the Court may consider you to be in default and may make orders against you without your input. If you are the defendant and do not appear, the Court may find for the plaintiff(s) and proceed immediately to the assessment of damages or a hearing on the relief sought." In accordance with the e-mail policy, the hearing notice was sent to the e-mail address disclosed by Migliore in his appearance. Migliore did not attend the hearing, and the trial court granted a joint motion filed by the plaintiffs and town for the entry of default, requiring the defendant to demonstrate good cause to strike the default within ten days.

2

On November 20, 2017, within the ten days required by the order granting the default, new counsel appeared for the defendant and moved to strike the default. In the motion, the defendant asserted that Migliore had "not receive[d] the notice [of hearing] mailed by the court and therefore did not make arrangements to attend the status conference." (Emphasis added.) The defendant submitted an affidavit of Migliore stating that he "did not receive [the] notice [of hearing] in the mail and therefore did not attend the hearing." (Emphasis added.) The defendant argued that, "[g]iven the fact that this matter is presently stayed and the scheduling involved a status conference . . . , issuing a default is extreme."

The plaintiffs and town objected, arguing that the status conference was "very important" because: (1) the case had been pending for more than a year; (2) the defendant had "been unwilling to negotiate a resolution, and ha[d] . . . refused to respond to the Plaintiffs' settlement proposal for almost one year"; (3) the defendant had continued to deny access to the roadway "even for emergency or necessary maintenance issues," refusing to respond to several requests by the plaintiffs to access the roadway "for deliveries of supplies and septic pumping"; and (4) the defendant had made access to the roadway impossible by erecting the berm. The plaintiffs and town additionally argued that, notwithstanding Migliore's claim that he had not received the hearing notice "in the mail," pursuant to the e-mail policy, the hearing notice was sent to Migliore by e-mail, and the "Clerk's office report[ed that] no emailed notices to Mr. Migliore were returned as undeliverable." The plaintiffs and town observed that, in addition to the hearing notice, the court had e-mailed Migliore notices of its decisions granting both the motion to allow him to represent the defendant and the motion for the entry of default. In denying the motion to strike, the trial court "agree[d] with the arguments of the Plaintiff[s]."

The defendant moved for reconsideration, acknowledging the existence of the e-mail policy and that Migliore had received the hearing notice by e-mail, but claiming that the he had been unaware of the e-mail because it had been directed to a "spam" folder without notification to him. The defendant argued that, by its terms, the e-mail policy applied only to "[c]ounsel of record and pro-se litigants," and not to a "non-lawyer representative" like Migliore. The defendant further argued that Migliore had requested, in his cover letter to the court, that the court contact him by mail, and that "the procedures for non-lawyer representation and the application which the clerk's office supplied" did not notify Migliore of the e-mail policy. The defendant claimed that Migliore was never "requested to provide the court with an email address," and that "to date he has not provided his e-mail address to the court." The defendant surmised that the trial court had obtained Migliore's e-mail address, without his knowledge, from the e-mail authorization. With the motion, the defendant submitted: (1) an affidavit from an engineer who examined Migliore's laptop computer, opined that Migliore is not "computer savvy," and stated that the computer was set up such that the court's incoming e-mails would be directed

to a "spam folder" without notice; and (2) an affidavit from Migliore claiming that the application to be a non-lawyer representative did not specify that he would receive notices by e-mail, that he had assumed he would receive notices by mail, that he is not computer proficient, and that the court's notices had been directed to a "spam folder" that he does not check.

The plaintiffs and town objected, observing that, contrary to the defendant's representations, Migliore had in fact provided the court with his e-mail address, as required by Superior Court Rule 17(a), in his appearance. The plaintiffs and town further emphasized that, as a non-lawyer representative, Migliore was required to "comply with the Rules of Professional Conduct as set forth in Professional Conduct Rule 8.5." Super. Ct. R. 20(b). Thus, the plaintiffs and town argued that Migliore could not be held to a lower standard than a self-represented party, as suggested by the defendant's argument that the e-mail policy applies only to counsel of record and self-represented parties, and that it was Migliore's obligation to comply with the e-mail policy, not the court's obligation to affirmatively apprise him of it in the application materials. Finally, the plaintiffs and town observed that the evidence submitted by the defendant established that, in fact, the notice of hearing had been sent to, and received by, Migliore, and argued that the existence of a spam folder did not absolve Migliore of his obligation to ensure that he reviewed court notices sent to the e-mail address that he had provided.

On January 4, 2018, the trial court denied the motion for reconsideration, "agree[ing] with the Plaintiff's arguments." The court noted that it did not find the evidence submitted by the defendant with the motion credible, observing that "Mr. Migliore's application demonstrates his use of email," and that "[h]is inconsistent affidavits undermine the credibility of both."

On May 4, 2018, the trial court held a "hearing as to final judgment or decree" pursuant to Superior Court Rule 42(e). At the hearing, counsel for the defendant argued that the scope of the hearing should include the merits of the default judgment. The trial court rejected this argument, but allowed counsel to articulate her arguments for the record. Counsel for the defendant proceeded to make several offers of proof relating to Migliore's failure to attend the November 3, 2017 status hearing, and the following colloquy occurred:

> [Defense Counsel]: . . . [O]n September 11[, 2017], Mr. Migliori sent the non-lawyer affidavit that was required by Rule 20.
> So that was sent. NO where on this form that he signs did it ask for – say, by the way, going forth, everything's going to be sent to you by email. Okay. So then we get –
> THE COURT: What if I were to tell you the clerk told him that orally?
> [Defense Counsel]: Excuse me.
> THE COURT: What if I were to tell you that the deputy clerk in charge of civil told him that orally?

4

[Defense Counsel]: Well, he never spoke directly to the clerk, so that I don't know.

Counsel for the defendant then continued with the offers of proof. At no point did defense counsel argue that the trial court's suggestion that the deputy clerk had told Migliore that he would receive court notices by e-mail indicated that the trial court had engaged in an improper ex parte communication with the deputy clerk. Nor did counsel ask the trial court to identify the deputy clerk, or request that the deputy clerk be called to testify regarding the communication.

When the plaintiffs objected to the offers of proof on the basis that the trial court had already denied the motion to strike, the trial court responded:

THE COURT: Yeah, I didn't find this particularly persuasive back then, I don't now. I mean, your client provided an email address . . . on the appearance. He went through great efforts to file a non-attorney represent –
. . .
. . . notice of representation, and all the email – I mean, all the minutes are by email.
So I just didn't find his expert coming in and saying this guy doesn't know any better. He's using a non-assigned email address and doesn't get a notification when he gets one. I just – this isn't 1990.
. . .
. . . This how everybody does business now, and I –
. . .
. . . – can't – if a lawyer was practicing in my court, you know, and they don't open their mail, they just got to call their malpractice carrier.
[Defense Counsel]: Right. But this is a non-lawyer.
THE COURT: I hold him to the same standard.

When counsel for the defendant then attempted to argue that Migliore had not received notice that the court would communicate by e-mail, the trial court sustained the plaintiffs' objection, noting that it had "already made a credibility assessment on the reason for the default," and that it had based its credibility assessment "on the pleadings I had and the fact that [Migliore] submitted minutes where he's emailed, and all the correspondence is by email."

Following the hearing, the trial court issued an order ruling that the plaintiffs have "a permanent easement and right of way over the" portion of the roadway traversing the defendant's property that has been used since prior to 1975 to access the plaintiffs' lots, and that a section of that portion of roadway "is confirmed as a Class VI Road." Additionally, the trial court enjoined the defendant from interfering with the plaintiffs' use of the roadway, and ordered

5

the defendant to remove any obstructions from the roadway, including the berm.  Finally, the trial court denied a motion to dismiss in which the defendant had argued that the court lacked subject matter jurisdiction because owners of properties through which the roadway continues to the north of the defendant's property were not joined as parties.  This appeal followed.

The defendant first argues that the trial court improperly received and relied upon an improper ex parte communication, namely, an alleged communication between the trial judge and deputy clerk to the effect that the clerk had orally informed Migliore of the e-mail policy.  We note that the fact that such a communication occurred does not necessarily follow from the trial court's question of counsel, "What if I were to tell you that the deputy clerk in charge of civil told [Migliore] that orally?"  The question may have been prompted, for instance, by the trial judge's knowledge of internal procedures of the court's clerk's office.  Nor does it necessarily follow from the question that such a communication, if it occurred, would have occurred at the time of, or in connection with, the trial court's decisions denying the motions to strike the default and to reconsider.  Even if the communication occurred, it would not necessarily have constituted an improper ex parte communication.  "A judge may consult with court staff and court officials whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities . . . provided the judge makes reasonable efforts to avoid receiving factual information that is not part of the record, and does not abrogate the responsibility personally to decide the matter."  Sup. Ct. R. 38, Rule 2.9(A)(3).

We need not decide, however, whether the trial court improperly considered an ex parte communication because, even if it did, the defendant failed to preserve the issue for our review.  It is a long-standing rule that parties may not have appellate review of issues not raised in the trial court.  Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004).  "Issues must be raised at the earliest possible time, because trial forums should have a full opportunity to come to sound conclusions and to correct errors in the first instance."  O'Hearne v. McClammer, 163 N.H. 430, 438 (2012) (quotation omitted).  "The trial court must have had the opportunity to consider any issues asserted by the defendant on appeal; thus, to satisfy this preservation requirement, any issues that could not have been presented to the trial court before its decision must be presented to it in a motion for reconsideration."  State v. Mouser, 168 N.H. 19, 27 (2015); see also Super. Ct. R. 12(e).

In this case, the defendant did not assert, at any point in the May 4, 2018 hearing, that the trial court's query — "What if I were to tell you that the deputy clerk in charge of civil told [Migliore] that orally?" — revealed that the court had engaged in, and considered, an improper ex parte communication in connection with the default.  Nor did the defendant move to reconsider on that basis.  To the extent the defendant contends that its counsel's response to the query — "Well, [Migliore] never spoke directly to the clerk, so that I don't know"

6

— was an objection that adequately preserved the issue, at most, the response reflected a factual dispute as to whether the deputy clerk had orally notified Migliore of the e-mail policy.  It did not apprise the trial court that its question revealed that it had engaged in, or considered, any improper communication.  Had the defendant timely raised its concerns, the trial court may very well have disclosed on the record the basis for its question with sufficient detail to assess whether it in fact had engaged in an improper ex parte communication.

Nor did the defendant preserve its arguments in its November 15, 2018 motion to recuse Judge Ruoff.  The defendant filed the recusal motion more than four months after it had filed the present appeal.  A party may preserve a claim of reversible error through a post-decision motion only if the failure to raise the issue earlier did not deprive the trial court of an opportunity to correct its error.  Mortgage Specialists v. Davey, 153 N.H. 764, 786 (2006).  A motion filed after an appeal has already been taken so as to deprive the trial court of jurisdiction over the issue raised in the appeal, see Rautenberg v. Munnis, 107 N.H. 446, 447 (1966), does not satisfy this standard.

We next address the defendant's argument that the trial court erred by denying its motion to strike the default.  The defendant argues that Migliore was "a self-represented litigant" who "was not aware that all non-confidential orders and notices would be sent to him via email . . . and was waiting to receive notice of his next court appearance via the mail."  Because, the defendant claims, Migliore was not technologically proficient, and because the hearing notice had been directed, without Migliore's knowledge, to a "spam folder," the defendant asserts that the record compels a finding that "[i]t was through accident, mistake, or misfortune and not neglect that" Migliore did not attend the November 3, 2017 hearing.  The defendant further argues that the final decree is inconsistent with the trial court's earlier denial of a preliminary injunction and with the lack of any express easement rights in the plaintiffs' chains of title.  Under these circumstances, the defendant contends that the trial court should not have deprived it of "a valuable property interest" for missing a "status conference."

We will not disturb the trial court's ruling on the motion to strike the default judgment unless the trial court erred as a matter of law or unsustainably exercised its discretion.  In the Matter of Birmingham & Birmingham, 154 N.H. 51, 55 (2006).  Because the defendant relies upon the "accident, mistake, or misfortune" standard, we will assume, without deciding, that that standard governs our review of the trial court's denial of the motion to strike the default.  See id. at 56 (applying "accident, mistake, or misfortune" standard because appealing party's motion to strike default "essentially sought a new hearing on the merits" for purposes of RSA 526:1 (1997)).  "Accident, mistake, or misfortune" means "something outside of [the defendant's] control, or something which a reasonably prudent person would not be expected to guard against or provide for."  Id. (quotation omitted).  "Whether accident,

mistake, or misfortune occurred is determined by the trier of fact, and its finding will be conclusive unless it is unsupported by the evidence." Id.

In this case, Migliore was not a "self-represented litigant." Rather, he was a non-lawyer representative bound by "the Rules of Professional Conduct as set forth in Professional Conduct Rule 8.5," Super. Ct. R. 20(b), including the obligation to exercise reasonable diligence in representing the defendant, see N.H. R. Prof. Conduct 8.5(c) (providing that, among other rules, New Hampshire Rule of Professional Conduct 1.3 applies to non-lawyer representatives). Even if he were self-represented, however, a self-represented party is bound by the same procedural rules that govern parties represented by counsel. Birmingham, 154 N.H. at 56. We note that there is no provision of the Superior Court Rules that requires the court to send all non-confidential orders and notices by United States mail, and there is no dispute that the e-mail policy, adopted more than a year prior to Migliore's appearance and published on the court's website, applied in this case. Accordingly, it was Migliore's obligation in undertaking the representation to learn of the e-mail policy and take measures to ensure that he reviewed e-mails sent by the court.

The record establishes that the trial court e-mailed notice of the November 3, 2017 hearing to Migliore, and that Migliore received it. Migliore simply failed to take measures to ensure that he reviewed the e-mail. This lapse is not something that was outside of his control, or that a reasonably prudent person would not be expected to guard against. Indeed, the e-mail policy specifically cautions parties to take steps to ensure that court e-mails are not directed to a "spam folder." Moreover, the trial court's determination that Migliore's explanation for why he did not discover the e-mail lacked credibility is well-supported by the evidence. In his initial affidavit, Migliore stated only that he had not received the hearing notice "in the mail," without acknowledging the e-mail policy. In the motion for reconsideration, the defendant acknowledged the e-mail policy, but claimed, wrongly, that Migliore had not provided an e-mail address. As the trial court observed, the e-mail authorization demonstrated that, notwithstanding Migliore's claimed lack of technological proficiency, he had in fact communicated by way of e-mail from the same address that he disclosed. Moreover, on its face, the e-mail authorization suggests that, notwithstanding the examination of Migliore's laptop computer, Migliore communicates by e-mail through a mobile device. We conclude that the evidence did not compel a finding of accident, mistake, or misfortune.

Finally, we reject the defendant's argument that the default judgment is inconsistent with the trial court's earlier denial of a preliminary injunction and the lack of express easement rights within the plaintiffs' chains of title. We have observed that "preliminary injunctions serve only to preserve the status quo until a trial on the merits," that preliminary injunction proceedings "are less formal and [based upon] evidence that is less complete than in a trial on

the merits," and that "it is generally inappropriate for a trial court at the preliminary-injunction stage to give a final judgment on the merits." N.H. Dep't of Envtl. Servs. v. Mottolo, 155 N.H. 57, 61 (2007) (quotations omitted). A default judgment, on the other hand, results in the admission of all material and well-pleaded allegations of fact, without the need to submit those facts to a trial. See O'Brien v. Continental Ins. Co., 141 N.H. 522, 523-24 (1996). The defendant has not developed an argument on appeal that the well-pleaded and material facts in the complaint do not support the relief granted by the trial court. Thus, the mere fact that the trial court, at the preliminary injunction phase, found that the plaintiffs were unlikely to succeed on the merits as to certain legal theories is not inconsistent with the entry of final judgment based upon the defendant's later default and effective admission of all material and well-pleaded factual allegations in the complaint.

Upon this record, we cannot say either that the denial of the motion to strike the entry of default was erroneous as a matter of law or an unsustainable exercise of discretion. Birmingham, 154 N.H. at 55.

Finally, we reject the defendant's argument that the trial court lacked subject matter jurisdiction. The defendant cites Porter v. Coco, 154 N.H. 353, 357 (2006), for the proposition that if the plaintiffs "fail to identify and join other parties identifiable from the record, even if speculative, this Court lacks subject matter jurisdiction over the case." The defendant then argues that, because the roadway at issue allegedly continues as a private road to the north of the defendant's property over parcels owned by other persons, because access to the plaintiffs' lots over the roadway thus necessitates traversing the lots to the defendant's north, and because the owners of the lots to the defendant's north were not named as parties to this case, the trial court lacked subject matter jurisdiction. We disagree.

"Subject matter jurisdiction" refers to the court's power to adjudicate the type of controversy at issue. Hemenway v. Hemenway, 159 N.H. 680, 683 (2010). Pursuant to RSA 498:5-a (2010),

> [a]n action may be brought in the superior court by any person claiming title to, or any interest in, real . . . property . . . against any person who may claim to own the same, or any lien or encumbrance thereon, adverse to the plaintiff, or in whom the land records disclose any interest, lien claim or title conflicting with the plaintiff's claim, title or interest . . . for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the same . . . .

In Porter, the parties had conflicting claims to certain property that had been the subject of an earlier quiet title action brought by the respondents' predecessors in title. Despite knowing that the petitioners' predecessors in title

9

had a potential interest in the subject property, however, the respondents' predecessors did not name the petitioners' predecessors as parties to the prior action. The issue in Porter concerned whether the decree issued in the prior action was binding upon the petitioners. In holding that the prior decree did not bind the petitioners, we observed that "necessary parties to any proceeding . . . are those who have an interest in the subject-matter of the suit and whose rights may be concluded by the judgment," and that "[a] necessary party who has not been named a party to the action is not bound by the judgment" issued in the case. Id. (quotation and ellipses omitted). Because the petitioners' predecessors were known to have had a potential interest in the subject property at the time of the prior action, and because the petitioners' predecessors in title had not been named in the prior action, we concluded that the trial court did not have jurisdiction over the petitioners' predecessors so as to bind their successors, including the petitioners, to its decree and, thus, that the petitioners could collaterally attack the decree. See id. at 358.

We note that nothing in Porter suggests that the earlier decree was void as to the parties to the earlier quiet title action. Cf. Close v. Fisette, 146 N.H. 480, 483 (2001) (stating that decision rendered by a court lacking subject matter jurisdiction is void). Our reasoning in Porter focused upon the trial court's failure to establish jurisdiction over persons, not upon its authority to decide a quiet title action. Even if we were to construe Porter, however, to mean that a failure to name a necessary party to a quiet title action deprives the trial court of subject matter jurisdiction, there is no basis to rule that the owners of properties to the north of the defendant's property are necessary parties to this case. The plaintiffs' suit sought to determine their rights only as to that portion of the roadway that crosses the defendant's property; they did not seek to adjudicate their rights in any other land. Nor did the trial court's decree purport to resolve the plaintiffs' interest in any property other than the portion of the roadway that crosses the defendant's lot. Thus, "the subject-matter of the suit," Porter, 154 N.H. at 357 (quotation omitted), concerned only that portion of the roadway that crosses the defendant's lot. The defendant does not claim that any other party, including any of the owners of properties to its north, has an interest in the portion of the roadway that crosses its lot. Accordingly, the owners of properties to the defendant's north were not necessary parties to this case.

Affirmed.

Lynn, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Eileen Fox,
Clerk**

10